**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DIETZEL,** *et al.*, | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No.: 22-cv-0035** |
| | : | |
| **COSTCO WHOLESALE,** *et al.* | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                               **July 12, 2022**

Presently pending before the Court is Plaintiffs' Motion to Compel Defendants to Produce (1) Video Surveillance Referenced in Defendants' Discovery Responses; (2) Defendants' Warehouse Incident Report (Typed and Handwritten); and (3) More Specific Responses to Plaintiffs' Interrogatories (Mot. to Compel, ECF No. 17) and Defendants' response in opposition thereto (Resp., ECF No. 22).[1]  For the reasons that follow, Plaintiffs' motion shall be **GRANTED IN PART** and **DENIED IN PART**.

I.       **BACKGROUND**

On November 18, 2019, at approximately noon, Plaintiff John Dietzel allegedly tripped and fell due to an uneven sidewalk as he attempted to enter the tire center at Defendants' store located in North Wales, Pennsylvania.  (Compl., ECF No. 1, at ¶ 14; Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 1-2; Br. in Supp. of Resp., ECF No. 22, at 9)  Defendants assert that the alleged fall was not captured on its video cameras because there were no cameras in the area

---

[1]  The Honorable C. Darnell Jones, II, referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 19).

of the alleged fall or outside of the building that would cover any part of the outside area.  (Br. in Supp. of Resp., ECF No. 22, at 9).  However, Plaintiffs observe that claim notes produced by Defendants in discovery instruct Defendants: "If there is no footage of the incident, please burn a clip from the camera nearest to the loss 1 hour prior to the loss and continuing to 1 hour after." (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 2 (citation omitted)).  Accordingly, they seek to compel Defendants, prior to Mr. Dietzel's deposition, "to produce ***any and all*** video surveillance preserved from the PROPERTY on the subject date of loss, regardless of whether the Plaintiff's FALL is visible or that the Defendants confirm that they failed to preserve the described video as directed."  (*Id.* (emphasis in original)).

Defendants prepared a Confidential Warehouse Incident Report regarding the incident and produced a redacted version in discovery.  (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 2; Br. in Supp. of Resp., ECF No. 22, at 9).  Plaintiffs also move to compel an unredacted copy of this report.

Lastly, Plaintiffs seek to compel Defendants to provide more specific responses to a few of their interrogatories propounded to Defendants.

## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal litigation.  Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited. *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012) ("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de Nemours & Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)). Upon a party's motion or of its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure or discovery of the materials sought. *See* FED. R. CIV. P. 37(a). The moving party must initially demonstrate the relevance of the information sought to a particular claim or defense. *Bostwick v. Shoop*, No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3, 2010) (citing *Paluch v. Dawson*, Civil No. 1:CV–06–01751, 2008 WL 2785638 at *2 (M.D. Pa. July 17, 2008)). Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351

(1978) (citing *Hickman v. Taylor*, 349 U.S. 495, 501 (1947)). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Peay v. Fisher*, No. 3:15-CV-00345, 2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

## III.     DISCUSSION

### A.     Video Footage

Relying primarily on the opinion in *Williams v. D.P. Fence-North*, No. S-1340-10 (Schuylkill Com. Pl. Ct.) (Feb. 24, 2011) (ECF No. 17-10), Plaintiffs maintain that prior to Mr. Dietzel's deposition Defendants must produce all security footage preserved from the property for the date in question. (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 4). They further note that courts in this district have ordered these Defendants to produce similar footage prior to the injured plaintiff's deposition in three other cases. (*Id.* (citing *Haubert v. Costco Wholesale*, No. 20-4484 (E.D. Pa. Jan. 26, 2021) (ECF No. 17-13); *Kalbfleisch v. Costco Wholesale Corp.*, NO. 19-cv-2633 (E.D. Pa. Nov. 6, 2019) (ECF No. 17-12); *Viola v. Costco Wholesale Corp.*, No. 18-cv-4661 (E.D. Pa. Feb. 19, 2019) (ECF No. 17-11))).

Defendants respond that the cases Plaintiffs cite are not binding and instead rely upon *Delacruz v. Walmart Store 5103*, No. 2:10-cv-05932 (E.D. Pa. Mar. 7, 2011) (ECF No. 22, Ex. A) and *Nicholas v. Brookline Tobacco Outlet LLC*, No. GD 17-017838 (Allegheny Com. Pl. Ct. Apr. 12, 2018) (ECF No. 22, Ex. B), in which courts ruled that video footage of the incident in question could be produced after the plaintiff's deposition. (Br. in Supp. of Resp., ECF No. 22, at 10-11). They assert that "there would be no video footage of any activities occurring outside

4

of the warehouse at the time of the alleged incident," but argue, somewhat confusingly, that "[e]ven if there was video surveillance of the alleged incident," they need not produce it until after Plaintiffs' depositions are completed so that Defendants may ensure that Plaintiffs' testimony reflects their memory of the incident rather than what they viewed on any video footage and so that Defendants may impeach them regarding any inconsistencies between their testimony and the footage. (*Id.* at 11). Lastly, they request that if they are compelled to produce any footage that the Court designate it confidential and order its destruction at the conclusion of the litigation to protect the privacy of any other individuals depicted in the footage. (*Id.*).

At the heart of the parties' dispute is whether the requested footage is "security" footage (as Plaintiffs maintain) or "surveillance" footage (as Defendant contend). In *Williams*, the court addressed as a matter of first impression under Pennsylvania law the question of whether a defendant must produce "security," as opposed to "surveillance," footage prior to the plaintiff's deposition:

> During discovery, Plaintiffs learned that defense counsel has a security camera videotape recording of the events of that day which depict the alleged accident. Plaintiffs argue they are entitled to the videotape because the videotape was made contemporaneously with the events of the day and not for the purpose of litigation, and therefore is discoverable pursuant to Pa.R.C.P. 4005 and 4009.1. Defendants argue they do not have to turn over what they call a "surveillance" video until after Mr. Williams has been deposed because they plan to use it to impeach Mr. Williams . . . .
>
> This appears to be an issue of first impression. Surveillance videotapes of the plaintiff in a personal injury case, depicting plaintiff after the alleged accident, are considered work product prepared solely in anticipation of litigation; however, they are discoverable pursuant to Pa.R.C.P. 4003.1. See Bindschusz v. Phillips, 771 A.2d 803, 811 (Pa. Super. 2001), appeal denied, 567 Pa. 754, 790 A.2d 1012 (2001); Dominick v. Hanson, 753 A.2d 824, 826 (Pa. Super. 2000); Glover v. CSX Transportation, Inc., 2007 WL 3052319 (Phil. Cty. 2007). Pennsylvania courts have held that a defendant does not have to turn over surveillance

videotapes until after the plaintiff has been deposed because they are made for the purpose of impeaching the plaintiff's testimony regarding the extent of their alleged injuries. <u>Morganti v. Ace Tire & Parts Inc.</u>, 70 Pa. D.&C.4th 1 (Allegheny Cty. 2004); <u>see</u> <u>Bindschusz</u>, 711 A.2d at 811.

This, however, is not a *surveillance* tape; it is a *security* videotape made in the routine course of business by Defendants at their place of business. In <u>Bell v. Treasure Chest Casino, LLC</u>, Justice Traylor of the Supreme Court of Louisiana distinguished a security camera tape depicting an event that later became the subject matter of a lawsuit from a surveillance tape made in anticipation of litigation by defendant for purposes of impeaching the plaintiff. <u>Bell v. Treasure Chest Casino, LLC</u>, 950 So.2d 654 (La. 2007). We agree with Justice Traylor that where a security camera videotape shows the actual accident and was not created for the specific purpose of impeaching the plaintiff, it is generally discoverable and must be turned over upon request prior to the plaintiff's deposition. Such a videotape acts as an eyewitness to the event, and its importance in assisting the parties in the search for the truth far outweighs any potential impeachment value to defendant. <u>Bell</u>, 950 S.2d at 656.

In fact, in this case, if the security videotape shows that Plaintiff's claims regarding an alleged accident are fraudulent, as a representative of one of the Defendants testified during his deposition, we would think that the Defendants would not only want to produce that to the Plaintiffs, but use it to end the lawsuit as soon as possible and as a basis for possible sanctions against the Plaintiffs pursuant to Pa.R.C.P. 1023.1.

The security videotape must be produced to Plaintiffs, and no further depositions shall be taken in this matter until this occurs. An appropriate order follows.

*Williams*, No. S-1344-10, at 1-3 (ECF No. 17-10) (emphasis in original).

Although not binding on this court, *Williams* is well-reasoned. Security footage – of the area of the accident scene, around the time of the accident, and made in the usual course of business, like the footage at issue here – may have substantial probative value outweighing any potential value in impeaching a plaintiff whose testimony regarding an alleged accident does not conform with subsequently produced footage. Indeed, as the *Williams* court noted, such footage may prove dispositive if it shows that the plaintiff suffered no accident and is attempting to

defraud the defendant. *Id.* at 3.  Presumably, security footage showing that an accident occurred

and for which the defendant is liable might also facilitate resolution of the case, via a negotiated

settlement. *Williams*'s persuasive value is only bolstered by the fact that multiple courts in this

district have also ordered Defendants to produce security footage prior to the plaintiff's

deposition. *See Haubert*, No. 20-4484, at 2 (ECF No. 17-13) ("There is simply no precedent for

Costco's request to delay the production of relevant and substantive evidence. . . .  The video

footage is discoverable and must be turned over to Plaintiff prior to her deposition.");

*Kalbfleisch*, No. 19-cv-2633 (ECF No. 17-12); *Viola*, No. 18-cv-4661 (ECF No. 17-11); *see also*

*Plotnick v. Costco Wholesale Corp.*, No. 19-2486 (E.D. Pa. Dec. 13, 2019) (ordering Costco to

produce video footage prior to the plaintiff's deposition).

Defendants' reliance on the footnote order in *Delacruz* is misplaced.  In reasoning

equally applicable here, the United States District Court for the District of New Jersey explained

in *Inferrera v. Wal-Mart Stores, Inc.*, why *Delacruz* is not persuasive:

> Plaintiff primarily relies upon the Honorable Joel M. Slomsky's
> March 7, 2011 Order in *Delacruz v. Walmart Store 5103, Walmart
> Associates, Inc.*, C.A. No. 10–5932 (E.D. Pa. March 7, 2001), and
> his March 21, 2011 Order denying plaintiff's motion for
> reconsideration. It appears from the Orders that Judge Slomsky
> delayed the production of defendant's videotape until after
> plaintiff's deposition. However, the only support the court relied
> upon was *Machi v. Metropolitan Life Ins.*, Co., No. 02:07cv1754,
> 2008 WL 2412947, at *1–2 (W.D. Pa. June 10, 2008). That case is
> distinguishable because it addressed surveillance tapes, not a tape
> of the underlying incident in question that was prepared in the
> regular course of business. (The *Machi* decision relied upon *Snead
> v. American ExportIsbrandtsen Lines*, Inc., 59 F.R.D. 148 (E.D.
> Pa. 1973), which also addressed the production of surveillance
> tapes).

No. 11-5675, 2011 WL 6372340, at *2 (D.N.J. Dec. 20, 2011).

Echoing *Williams*, the court additionally explained why cases involving "surveillance" footage differ from those in which the plaintiff seeks contemporaneous footage of the accident scene:

> A fundamental error in defendant's argument is that it is seeking to delay the production of a "surveillance" tape. That is not the case. As used in this context surveillance connotes the close observation of a person under suspicion. In this case, defendant is seeking to delay the production of a tape prepared in the regular course of its business. Defendant's references to its surveillance tape are, therefore, erroneous, misleading, and ill-conceived. This is especially true since defendant is aware that the cases it relies upon address classic surveillance tapes and not contemporaneous business tapes of a plaintiff's accident in a retail store.

*Id.*

Defendants also cite the Allegheny County Court of Common Pleas order in *Nicholas* denying the plaintiff's emergency motion to compel the defendant to produce video footage of the incident prior to the plaintiff's deposition and instead ordering that the footage be produced "immediately following" the deposition. (ECF No. 22, Ex. B). The circumstances and timing surrounding the court's decision are not apparent from its one sentence order, nor is its reasoning. (*See id.*). In any event, this Court does not find this ruling persuasive in light of *Williams*, *Inferrera* and the four cases from this district reaching a contrary conclusion.

Nonetheless, Plaintiffs' request in their motion for "any and all video" from the entire property through the date of the alleged fall, regardless of whether the fall is visible in the footage, is overbroad. As Defendants note, Plaintiffs' discovery requests only asked for footage "showing the Plaintiff's FALL for a period of thirty (30) minutes before and after the FALL." (Defs.' Resps. to Pls.' Interrogatories, ECF No. 17-4, at No. 11.F). Unlike Plaintiffs' original request, the current request is not reasonably limited in time and scope or proportional to the needs of the case. Plaintiffs have made no showing as to why they need all video footage from

the entire facility for the entire 24-hour period of November 18, 2019.  Further, Plaintiffs' own

cited cases do not support ordering production of such expansive footage.  *See Haubert*, No. 20-

4484, at 1 (ECF No. 17-13) (ordering production of "the video footage of Plaintiff's fall");

*Williams*, No. S-1344-10, at 1, 3 (ECF No. 17-10) (ordering production of footage that "depict[s]

the alleged accident").

Accordingly, the Court will grant in part and deny in part Plaintiffs' motion.  Within

seven days, Defendants shall either produce the 30 minutes of video footage preceding,

including, and following the incident (for a total of one hour of footage) or, if they have no such

footage, so certify in writing to Plaintiffs.  Plaintiffs need not appear for depositions until after

the footage or certification is produced.  To protect the privacy interest of others that may be

depicted in any footage, it shall be held as confidential, and within 30 days of the conclusion of

this case, including any appeal, Plaintiffs shall certify in writing to Defendants that they have

destroyed it.  *See Haubert*, No. 20-4484, at 1 (ECF No. 17-13) (ordering destruction of produced

video footage at the conclusion of the litigation).

## B.      Warehouse Incident Report

Relying primarily on *Evert v. Pettinichio*, 307 F. Supp. 3d 398 (E.D. Pa. 2018), as well as

*United States v. Ernstoff*, 183 F.R.D. 148 (D.N.J. 1998) (cited in *Evert*), *Kalbfleisch* and

*Haubert*, Plaintiffs argue that the Warehouse Incident Report is not privileged and should be

produced prior to Mr. Dietzel's deposition.  (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 6-

8).  Reciting the elements of attorney-client privilege as set forth in *SodexoMAGIC, LLC v.

Drexel Univ.*, 291 F. Supp. 3d 681 (E.D. Pa. 2018), Defendants respond that the report is

attorney-client privileged because it "was prepared by a Costco employee for Costco's legal

counsel for the purpose of seeking legal advice and services in anticipation of a potential future

lawsuit." (Br. in Supp. of Resp., ECF No. 22, at 12-13). Citing Federal Rule of Civil Procedure 26 (b)(3)(A) and *Newark Ins. Co. v. ADT Sec. Sys., Inc.*, No. 96-3469, 1997 WL 438458 (E.D. Pa. July 29, 1997), they further contend that the report is protected work-product/trial preparation material "[b]ecause a Costco member had just been injured, it was reasonable for Costco employees to anticipate future litigation[,] [and] the [report] was prepared for Costco's legal counsel." (*Id.* at 13; *see also* FED. R. CIV. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).")).

In *Evert*, the court addressed a claim of work-product/trial preparation material protection over redacted portions of an Incident Report prepared after a toolbox allegedly flew off the side of the defendant's box truck and struck the plaintiff's vehicle, causing property damage and injury. 307 F. Supp. 3d at 399. The court rejected the defendants' assertion of privilege under Rule 26(b)(3)(a) based on the contention "that it was readily apparent Mr. Evert had an identifiable claim for property damage and that litigation was more than an abstract possibility or an unwanted fear." *Id.* at 399-400. It explained: "By that definition, virtually every accident investigation would become privileged as trial preparation material. There is no support for such an expansive view." *Id.* at 400. It noted that the commentary to Rule 26 makes clear that the privilege does not apply to, *inter alia*, "[m]aterials assembled in the ordinary course of business . . . ." *Id.* (quoting FED. R. CIV. P. 26(b)(3)(A) advisory committee's notes to 1970 amendment; citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993)). In observing that the discoverability of incident reports is "well-settled," the court relied upon district court cases from around the country, as well as Moore's Federal Practice. *Id.*

(citing *Ernstoff*, 183 F.R.D. at 156; *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 661 (S.D.

Ind. 1991); *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 n.4

(M.D.N.C. 1988); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986); *Soeder*

*v. Gen. Dynamics Corp.*, 90 F.R.D. 253, 255 (D. Nev. 1980); 6 JAMES WM. MOORE ET AL.,

MOORE'S FEDERAL PRACTICE § 26.70[3][c][ii] (3d ed. 2017)).

The court expressly endorsed the reasoning set forth in *Soeder*, a case involving the

discoverability of an accident report prepared after a jet crash:

> The fact that Defendant anticipates the contingency of litigation
> following a crash of one of its aircraft does not automatically
> qualify Defendant's "in-house" report as work product. Certainly
> litigation is a contingency to be recognized by any aircraft
> accident. However, given the equally reasonable desire of
> Defendant to improve its aircraft products, to protect future pilots
> and passengers of its aircraft, to guard against adverse publicity in
> connection with such aircraft crashes, and to promote its own
> economic interests by improving its prospect for future contracts
> for the production of said aircraft, it can hardly be said that
> Defendant's 'in-house' report is not prepared in the ordinary
> course of business.

*Id.* (quoting *Soeder*, 90 F.R.D. at 255).

The court found significant that the report consisted of a preprinted form with blank

spaces to insert information, that no attorney was identified as having participated in or ordered

the investigation or received a copy of it, and that it made "no reference to any claim of

litigation, current or anticipated." *Id.* The court concluded that, "[c]onsequently, the principal

basis upon which Defendants asserted a privilege does not exist." *Id.* at 400.

*SodexoMAGIC, LLC*, cited by Defendants, considered whether the attorney-client

privilege applied to various internal emails sent and received by the parties. 291 F. Supp. 3d at

683. The case enumerates the requirements for invocation of the privilege under Pennsylvania

law, but it is of limited use in applying these requirements to an incident report like the document

at issue in this case.  *See id.* (citing *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999)).  The other case cited by Defendants, *Newark Insurance Co.*, centered on whether the work-product doctrine protected reports prepared by the defendant's employees and manager after the manager spoke to in-house counsel about a burglary at the plaintiff's insured's property.[2]  1997 WL 438458, at *1.  In limited analysis, the court stated: "Incident reports such as these are often prepared for use in a future lawsuit. The Court concludes that 'the primary motivating purpose behind the creation of the document[s] was to aid in possible future litigation.'"  *Id.* (quoting *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990)).

Although heavily redacted, the Warehouse Incident Report in this case appears more like the report ordered produced in *Evert* than the reports deemed privileged in *Newark Insurance Co.*  It is apparent from what little of the report is visible that it is a preprinted form with blank spaces to enter information.  (Warehouse Incident Rpt., ECF No. 17-6, at 3, 5 (containing blanks where preparer of the report filled in the "Member Name" ("Dietzel, John J") and the "Warehouse Loc#" ("098-0248"))).  Indeed, the form itself appears to have its own form number, "ML6327028."  (*Id.* at 2).  As in *Evert*, "Defendants have not identified any participant in the investigation as an attorney[;]" rather, they indicate that the report "was prepared by a Costco employee . . . ."  (Br. in Supp. of Resp., ECF No. 22, at 13; *Evert*, 307 F. Supp. 3d at 400).  The report instructs the person filling it out that it "is to be prepared for the company's legal counsel," but Defendants do not contend that any attorney ordered its preparation or that the employee who prepared it communicated with any attorney before doing so.  (Br. in Supp. of Resp., ECF No. 22, at 13; Warehouse Incident Rpt., ECF No. 17-6, at 2, 4; *cf. Newark Ins. Co.*,

---

[2]  The court separately concluded that the attorney-client privilege did not apply because the defendant failed to show that the reports were transmitted to counsel to obtain legal advice. *Newark Ins. Co.*, 1997 WL 438458, at *1.

1997 WL 438458, at *2 (reports prepared after manager spoke to in-house counsel)).  Indeed,

like in *Evert*, Defendants have not identified, including in their privilege log, any attorney as

"even having received a copy" of the report.  (Br. in Supp. of Resp., ECF No. 22, at 13; Priv.

Log, ECF No. 17-6, at 1; *Evert*, 307 F. Supp. 3d at 400).  Nor does the report – or at least any

visible portion of it – make any "reference to any claim of litigation, current or anticipated."  *See*

*Evert*, 307 F. Supp. 3d at 400.

This Court finds that the Warehouse Incident Report is neither a privileged attorney-

client communication nor protected work-product/trial preparation material.  In reaching this

decision, the Court joins at least two other courts within this district that have reached the same

conclusion as to this document of Defendants.  *Haubert*, No. 20-4484, at 2 (ECF No. 17-13);

*Kalbfleisch*, No. 19-cv-2633 (ECF No. 17-12).  As the Honorable Judge R. Barclay Surrick

amply explained in *Haubert*:

> Defendant also contends that the Warehouse Incident
> Report . . . [is] privileged because [it] contain[s] attorney-client
> communications and constitute[s] work product.
>
> The Warehouse Incident Report is a preprinted Costco form that
> contains the following language at the top: "This report is to be
> prepared for the company's legal counsel. Do not give a copy of
> this report to or discuss its contents with any person except as
> instructed below." (Def.'s Resp. Ex. D, ECF No. 15.) Except for
> this language, Costco has redacted the entirety of the report. (*Id.*)
>
> . . .
>
> Rule 26(b)(3) states that "a party may not discover documents and
> tangible things that are prepared in anticipation of litigation or for
> trial by or for another party or its representatives . . . ." Fed. R.
> Civ. P. 26(b)(3). It is Costco's burden to establish that the Incident
> Report was prepared in anticipation of litigation. *Holmes v.*
> *Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir.
> 2000). When statements from witnesses are obtained "in the
> ordinary course of business," they do not qualify as work product
> material eligible for protection under Rule 26(b). *Martin v. Bally's*

*Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing Fed. R. Civ. P. 26(b) advisory committee's note).

The Warehouse Incident Report was prepared the day of the accident, and in a manner that appears to be in the ordinary course of Costco's business whenever an accident like this occurs at a Costco warehouse. As one court observed, "[i]f records prepared in the ordinary course of business can be deemed privileged simply because a claim might arise at a later point, then the rules of discovery become an impediment to determining the facts of a case, directly contrary to their purpose." *Evert v. Pettinichio*, 307 F. Supp. 3d 398, 400 (E.D. Pa. 2018) (rejecting argument that incident report in negligence action was prepared in anticipation of litigation because "[b]y that definition, virtually every accident investigation would become privileged as trial preparation material" and "[t]here is no support for such an expansive view"). Moreover, Costco does not offer any facts about who prepared the Incident Report, how it was prepared, and whether an attorney was consulted. A pre-printed form that includes language stating that the document is to be prepared for legal counsel is not enough. Costco has failed to meet its burden in establishing that the Incident Report qualifies as work product.

Costco has also failed to meet its burden in establishing that the Incident Report qualifies as attorney-client communications. The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230-31 (3d Cir. 2007) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The burden is on the party asserting the privilege—here, Costco—to establish that the Incident Report is protected. *United States v. Voigt*, 89 F.3d 1050, 1067 n.6 (3d Cir. 1996). Costco has failed to include any facts about whether this statement was in fact communicated to legal counsel. Simply relying on the pre-printed form's boilerplate language that the report is prepared for legal counsel is not enough. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477-78 (E.D. Pa. 2005) (finding that plaintiff failed to meet its burden of establishing that documents were protected by the attorney-client privilege where plaintiff failed to identify any specific attorney with whom the confidential communication was made); *see also Plotnick v. Costco Wholesale Corp.*, Case No. 19-2486 (E.D. Pa., filed Dec. 13, 2019), at ECF No. 18 (rejecting argument that preprinted Warehouse Incident Report qualifies as privileged document).

No. 20-4484, at 2 (ECF No. 17-13).

Accordingly, the Court grants Plaintiffs' motion as to the Warehouse Incident Report and orders it produced without redactions within seven days.

### C. Interrogatory Responses

Lastly, Plaintiffs move to compel more specific responses to Interrogatory numbers 2, 6, 7, 9 and 12.[3]  (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 8-9).  Defendants respond only that, in response to Interrogatory number 6, they should not be required to identify all non-managerial employees working on the property on November 18, 2019, because the request is overbroad and unduly burdensome inasmuch as there were over 100 workers present on that date.  (Br. in Supp. of Resp., ECF No. 22, at 14).  The Court agrees with Defendants as to its limited objection.  Plaintiffs have sufficiently asked elsewhere for the information they need.  In Interrogatory number 5, Plaintiffs asked Defendants to identify all management personnel in charge of the store on the date of the alleged incident.  In Interrogatory number 7, they asked Defendants to identify any maintenance personnel.  In Interrogatory number 8, they asked for any witnesses.  (Defs.' Resps. to Pls.' Interrogatories, ECF No. 17-4, at Nos. 5, 7-8).  Plaintiffs have articulated no basis for the identification of all 100-plus employees of Defendants working at the property on the date in question, nor can the Court discern any.  Accordingly, the Court will grant Plaintiffs' request as to Interrogatories numbers 2, 7, 9 and 12 and deny the motion as it relates to Interrogatory number 6.  Within seven days, Defendants shall provide Plaintiffs with more specific responses to Interrogatories numbers 2, 7, 9 and 12.

---

[3]  In their brief, Plaintiffs do not identify Interrogatory number 12 by its number, but instead ask for additional information regarding the individuals who took the photographs produced in discovery and when they were taken.  (Br. in Supp. of Mot. to Compel, ECF No. 17-2, at 9).  This information was requested in Interrogatory number 12.A and B.  (Defs.' Resps. to Pls.' Interrogatories, ECF No. 17-4, at Nos. 12.A-B).

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part. Within seven days, Defendants shall either produce the 30 minutes of video footage preceding, including, and following the incident (for a total of one hour of footage) or, if they have no such footage, so certify in writing to Plaintiffs.  Plaintiffs need not appear for depositions until after the footage or certification is produced.  Any footage shall be held as confidential, and within 30 days of the conclusion of this case, including any appeal, Plaintiffs shall certify in writing to Defendants that they have destroyed it.  Further, within seven days, Defendants shall produce the Warehouse Incident Report without redactions and provide Plaintiffs with more specific responses to Interrogatories numbers 2, 7, 9 and 12, as detailed in Plaintiffs' brief.

In all other respects, the motion is denied.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

16